# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.     **DOYLE UNDERWOOD,** | ) | |
|                     **Plaintiff,** | ) | |
| vs. | ) | |
| 1.     **JENSEN FARMS, a trade name;** | ) | |
| 2.     **FRONTERA PRODUCE LTD, a foreign corporation;** | ) | |
| 3.     **PRIMUS GROUP, INC., d/b/a PRIMUS LABS, a foreign corporation;** | ) | Case No.: 6:11-CV-348-JHP |
| 4.     **PRUETT'S FOOD, INC., a domestic corporation;** | ) | |
| 5.     **ASSOCIATED WHOLESALE GROCERS, INC., a foreign corporation; and** | ) | |
| 6.     **JOHN DOES 1-10,** | ) | |
|                     **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Defendant Primus Group, Inc.'s ("Primus") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 89); Plaintiff's Response in Opposition to Primus' Motion to Dismiss (Doc. No. 93); Defendant Frontera Produce LTD's ("Frontera") Partial Joinder in Plaintiff's Response in Opposition to Primus' Motion to Dismiss, [Doc. No. 94]; and Primus' Reply to Plaintiff's Response (Doc. No. 94). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

## BACKGROUND

This case stems from a multi-state *Listeria* outbreak allegedly linked to contaminated cantaloupe manufactured, distributed, and sold collectively by Jenson Farms, Frontera, Associated Wholesale Grocers, Inc. ("AWG"), and Pruett's Food, Inc. ("Pruett's") during the

summer of 2011. One of the many consumers affected by this outbreak was Plaintiff Doyle Underwood, who contracted listeriosis after consuming a contaminated cantaloupe he purchased from Pruett's in Broken Bow, Oklahoma. Plaintiff became ill on September 2, 2011, and was subsequently hospitalized for approximately one month. While in the hospital, Plaintiff tested positive for a strain of *Listeria*, which Oklahoma health officials later linked to the multi-state outbreak involving cantaloupe manufactured by Jenson Farms.

Prior to the *Listeria* outbreak, Jenson Farms entered into a contract with Primus (the "Audit Contract"), whereby Primus agreed to provide auditing services to Jenson Farms related to manufacture and sale of food products. On July 25, 2011, through its agents Bio Food Safety and auditor James DiIorio, Primus performed an audit at a cantaloupe packinghouse owned by Jenson Farms in Colorado (the "July 25, 2011 Audit"). With regard to the July 25, 2011 Audit, Plaintiff alleges that

> Mr. DiIorio failed to observe, or properly downscore or consider, multiple conditions or practices that were in violation of Primus'[]audit standards applicable to cantaloupe packing houses, industry standards, and applicable FDA industry guidance.

(Doc. No. 77, 10.) In support of this contention, Plaintiff alleges that the results of an environmental assessment performed by the FDA on September 22-23, 2011, subsequently set out in a report dated October 19, 2011, identified unsatisfactory facility designs, equipment designs, and postharvest practices. Plaintiff posits that "these conditions and practices [were] inconsistent and irreconcilable with the 'superior' rating, and 96% score" Mr. DiIorio ultimately gave to Jensen Farms and should have caused the packinghouse to fail the audit. (*Id.* at 11.) Plaintiff concludes, "Had the Jensen Farms' packing house failed the July 25, 2011 audit, the cantaloupe that caused the Plaintiff['s] [l]isteriosis illness would not have been distributed by Jensen Farms and Frontera." (*Id.*)

2

On October 5, 2011, Plaintiff commenced the instant action seeking damages resulting from his listeriosis infection. In his Second Amended Complaint ("SAC"), Plaintiff asserts strict liability, breach of warranty, negligence, and negligence per se claims against Frontera, AWG, and Pruett's. Further, Plaintiff also asserts negligence claims against Primus based on (1) Primus' selection and retention of Bio Food Safety and (2) Mr. Dilorio's July 25, 2011 audit conduct. On October 11, 2013, Primus filed a Motion to Dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 89). This motion is fully briefed and now before the Court.

## DISCUSSION

Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), described the standard that must be met as "facial plausibility." In this context, "plausibility" refers to the scope and degree of specificity of the allegations in the complaint. *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012).

Although Fed. R. Civ. P. 8(a)(2) still requires the pleader to supply only "a short and plain statement of the claim," that statement must provide more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that "encompass a wide swath of conduct, much of it innocent." *Id.* In this regard, the plaintiff must do more than articulate a set of facts that could "conceivabl[y]" or "possibly" give rise to a

3

claim; he must "nudge[ ]his claims across the line from conceivable to plausible." *Id.* Of course, the degree of specificity that will be required will necessarily vary based on the context of the case. *Id.* Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See Iqbal,* 556 U.S. at 679. Ultimately, the question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

**A. Negligence in Conducting the July 25, 2011 Audit**

To establish a *prima facie* case of negligence under Oklahoma law, Plaintiff must prove that (1) a duty was owed to him, (2) the duty was breached because it was not properly exercised or performed, and (3) the breach of duty proximately caused Plaintiff to suffer harm. *Thompson v. Presbyterian Hospital, Inc.*, 652 P.2d 260, 263 (Okla. 1982). At its most basic level, "[a]ny claim of negligence depends on the existence of a duty and the breach of that duty." *Brewer v. Murray*, 292 P.3d 41, 46 (Okla. Civ. App. 2012) (citing *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 518 (Okla. 1990)). As explained below, the Court finds that Plaintiff has failed to allege facts sufficient to establish both the duty and causation elements of a negligence claim.

**1. Duty**

"A duty is a threshold question in any negligence case. Whether a duty exists presents a question of law which depends on the relationship between the parties and the general risks involved in the common undertaking." *McClure v. Sunshine Furniture*, 283 P.3d 323, 328 (Okla. Civ. App. 2012), as corrected (June 13, 2012) (citing *Wofford*, 795 P.2d at 518). "If a defendant does not owe a duty of care to the plaintiff, there can be no liability for negligence as a

matter of law." *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007). A duty can be grounded in "contract or some special relationship," or it can be grounded in "general principles of the law of negligence." *Id.*

The issue of whether a third-party auditor of a produce packinghouse owes a duty to ultimate consumers of the food processed therein is an issue of first impression in Oklahoma. In the absence of an authoritative pronouncement from a state's highest court, a federal court's task under the *Erie* doctrine is to predict how the state's highest court would rule if presented with the same case. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). The federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 467 (1940). To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law." *Wade*, 483 F.3d at 666 (citations and internal quotation marks omitted). The Court's analysis is guided by these principles.

**a. Duty Based on General Principles of Negligence Law**

The existence of a duty based on general principles of negligence law were explained by the Oklahoma Supreme Court in *Lowery v. Echostar Satellite Corporation*:

> We have long recognized that *without regard to the relationship of the parties,* a person owes a duty of care to another person whenever *the circumstances* place the one person in a position towards the other person such that an ordinary prudent person *would recognize* that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she *may cause danger of injury* to the other person. We have explained that a duty of care may arise from a set of circumstances which would require the defendant to foresee the particular harm to the plaintiff.

160 P.3d at 964 (citation and emphasis added). This duty is not grounded in any contractual or special relationship of the parties, but in the relationship created by the specific circumstances that are presented and known to the alleged tortfeasor.

In determining whether this common law duty applies, courts must weigh the following policy considerations: "1) foreseeability of harm to the plaintiff, 2) degree of certainty of harm to the plaintiff, 3) moral blame attached to defendant's conduct, 4) need to prevent future harm, 5) extent of the burden to the defendant and consequences to the community of imposing the duty on defendant, and 6) availability of insurance for the risk involved." *Id.* at 966 n.4. The most important consideration in determining the existence of a duty of care is foreseeability of harm to the plaintiff. *Id.* Significantly, "[f]oreseeable risk of harm that will lead to protection will not generally be extended beyond reason and good sense." *Id.* at 964 (citing *Rose v. Sapulpa Rural Water Co.*, 631 P.2d 752, 757 (Okla. 1981)). "The foreseeability component of duty is different than the foreseeability element of proximate cause. The latter is concerned specifically with whether and to what extent the defendant's conduct foreseeably and substantially caused the injury that occurred." *McClure*, 283 P.3d at 329 (citing *Delbrel v. Doenges Bros. Ford., Inc.*, 913 P.2d 1318, 1322 (Okla. 1996)).

The primary determination for the Court is whether Plaintiff's injury was foreseeable to the auditor at the time the allegedly negligent audit was conducted. The idea of foreseeability, while a relatively simple concept, it is inherently difficult to quantify and apply. As one scholar explained,

> [t]he universe, cosmology suggests, is comprised largely of "dark matter," invisible stuff ubiquitously binding all things together. Lurking deep inside the law of tort, permeating and connecting its various components, a vital ingredient defines and gives moral content to the law of negligence, controlling how each element fits together and, ultimately, whether one person is bound to pay another for harm. Foreseeability is the dark matter of tort. …

> For a person's actions to be wrongful, the person must have had a choice between alternative courses of action and also must have chosen, by some standard, incorrectly. If an actor chooses to act in a manner that violates some community norm of proper behavior, tort law holds the actor accountable for harmful consequences that result from that choice. Thus, tort responsibility normally implies that the actor ought to have considered and chosen to avoid the kind of harm he caused—that he or she wrongfully failed to avoid the harm. So, ascribing moral character (blame or praise) to a choice to risk or avoid the risk of harm implies the actor's ability to conceive ("foresee") its consequences. Foreseeability thus is bound up, inextricably, in notions of both wrongfulness and how far responsibility for wrongfulness should extend.

David G. Owen, *Figuring Foreseeability*, 44 WAKE FOREST L. REV. 1277 (2009) (footnotes omitted); *see also* William H. Hardie, Jr., *Foreseeability: A Murky Crystal Ball for Predicting Liability*, 23 CUMB. L. REV. 349 (1993).

After careful consideration of the circumstances of this case and the policy considerations outlined above, the Court finds that Primus owed no duty to Plaintiff in conducting the July 25, 2011 Audit pursuant to general principles of negligence law. At the outset, the Court finds Plaintiff's allegations insufficient to establish that Plaintiff's injuries were the foreseeable result of negligently performing the July 25, 2011 Audit more than a month prior to Plaintiff's injury. Further, the Court finds the connection between the July 25, 2011 Audit and the onset of Plaintiff's illness to be too remote in both time and circumstance. Significantly, Plaintiff has failed to plead facts sufficient to establish that the contaminated cantaloupe would not have been distributed if Primus had given Jenson Farms unsatisfactory audit results.[1] To impose a duty on auditors absent a showing that such auditors maintained some control over the distribution of the manufactured goods would be illogical and impose an unreasonable burden on third-party

---

[1] In his opposition brief, Plaintiff asserts Frontera would have been prevented from distributing the contaminated cantaloupe upon receipt of negative audit results because Defendant Frontera required that its suppliers be "Primus Certified." (Doc. No. 93, 22-23.) These factual assertions are not contained in Plaintiff's SAC and, therefore, cannot be considered by the Court for purposes of evaluating Primus' Motion to Dismiss. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010); *Gossett v. Barnhart*, 139 F.App'x 24, 24 (10th Cir. 2005) (unpublished) ("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint."); *Carter v. Daniels*, 91 F.App'x 83 (10th Cir. 2004) (unpublished) ("When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint.").

auditors. Accordingly, Plaintiff's allegations have failed to establish a duty owed to Plaintiff by Primus based on general principles of negligence law.

c. **Restatement (Second) of Torts § 311**

Plaintiff contends that Primus owed Plaintiff a duty under Restatement (Second) of Torts § 311, which recognizes a claim for negligent misrepresentation resulting in physical harm. Section 311 provides,

> One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other ***in reasonable reliance upon such information***, where such harm results (a) to the other, or (b) to such third persons as the actor should expect to be put in peril by the action taken. Such negligence may consist of failure to exercise reasonable care (a) in ascertaining the accuracy of the information, or (b) in the manner in which it is communicated.

Restatement (Second) of Torts § 311 (1965) (emphasis added). For context,

> [t]he Restatement gives as an illustration a truck driver who signals to a following car that it is safe to pass. In reliance on that signal a car proceeds and collides with an oncoming vehicle. The signaling truck driver's principal is subject to liability to the injured occupants in the passing vehicle.

*Williams v. Tulsa Motels*, 958 P.2d 1282, 1288 (Okla. 1998). Here, even assuming this provision was applicable to the facts this case, Plaintiff has failed to allege facts sufficient to establish that any action was taken in reasonable reliance on Primus' audit. Accordingly, the Court finds that Restatement (Second) of Torts § 311 does not impose a duty on Primus under the circumstances of this case.

c. **Restatement (Second) of Torts § 324A**

Plaintiff also contends that Restatement (Second) of Torts § 324A creates a duty of care under the circumstances of this case. Section 324A of the Restatement (Second) of Torts provides that,

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm

8

> resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) his undertaking to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Truitt v. Diggs*, 611 P.2d 633, 636 (Okla. 1980). Section 324A reflects the common law "Good Samaritan" Doctrine. "Under this doctrine, once one assumes the duty to act towards a particular person, and engenders reliance thereon by that person, there is then a legal obligation to act with care and an obligation not to worsen the situation." *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 977 (10th Cir. 1994) (citing Restatement (Second) of Torts §§ 323, 324, 324A).

While Oklahoma has not applied 324A to a case analogous to the instant action, other courts have applied these provisions in cases involving persons who negligently conduct safety inspections. 2 MADDEN & OWEN ON PROD. LIAB. § 19:8 (3d ed.). Courts are split on the issue of whether such inspectors have a duty or liability to third parties "with whom they are not in privity of contract, for injuries arising out of negligent inspections." *Id*. (collecting cases). Essentially, "the extent of a safety inspector's duty to third parties is dependent on the extent to which a jurisdiction has expanded the tort law duties of persons contracting to perform services for others to include the prevention of risk of harm to third parties foreseeably placed at risk by the negligent performance of an inspection undertaking." *Id*.

Significantly, "Oklahoma courts have found that §§ 323 and 324A impose a duty where the plaintiff and defendant have a relationship that inherently implicates safety and protection." *Frey v. AT&T Mobility, LLC*, 379 F. App'x 727, 729 (10th Cir. 2010) (unpublished) (citing *Lay v. Dworman*, 732 P.2d 455, 459–60 (Okla. 1986) (landlord has § 323 duty to minimize predictable security risks to his tenants); *Truitt*, 611 P.2d at 636–37 (security company owes § 324A duty to parents when formulating recommendations regarding school security); *Wiles v. Grace Petroleum Corp.*, 671 P.2d 682, 687 (Okla. Civ. App. 1983) (employer has § 324A duty

to maintain worksite security)). This action, however, does not involve the type of physical security concerns generally present in cases applying Oklahoma law where a duty is premised on §§ 323 and 324A. Thus, the Court must determine whether these provisions should be interpreted to apply to the circumstances of this case.

The Court is guided by the maxim that federal courts should not expand state law in the absence of clear guidance from the state's highest court. *See Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013). Plaintiff asks this Court to "expand the scope of tort liability under Oklahoma law by imposing a duty under entirely unprecedented circumstances" pursuant to §§ 323 and 324A. *Schrock*, 727 F.3d at 1284. This novel application of §§ 323 and 324A is "not supported by 'decisions rendered by lower courts in the relevant state' or 'district court decisions interpreting the law of the state in question.'" *Id.* (quoting *Wade,* 483 F.3d at 666). Consequently, the Court finds that §§ 323 and 324A are inapplicable to the circumstances of this case.

Nevertheless, even if §§ 323 and 324A applied to the instant action, Plaintiff still would be unable to recover under these provisions because Plaintiff has failed to allege facts sufficient to establish that Jenson Farms relied on the Primus audit or that such reliance increased the risk of harm. In *Truit v. Diggs*, the parents of a student fatally shot on school grounds brought a wrongful death action against the school board, its employees, and an independent contractor that had conducted a management study and made recommendations as to the necessity and adequacy of existing and future security systems within the school system. *See* 611 P.2d 633. The Oklahoma Supreme Court affirmed the district court's dismissal of the claim against the independent contractor because there was no showing in the pleadings regarding what recommendations had been made by the contractor or what action had been taken by the school

board in reliance upon the contractor that might have increased the risk of harm to the student. *Id.* at 637. After carefully reviewing the facts contained in the SAC, the Court finds that Plaintiff has failed to allege facts sufficient to establish that Jenson Farms relied on the Primus audit or that such reliance increased the risk of harm. Accordingly, the Court finds that Plaintiff cannot recover under §§ 323 and 324A.

### d. Duty Arising from Contractual Relationship

A duty may arise based on a contractual relationship and "is to be measured by the nature and scope of the contractor's contractual undertaking … ." *Copeland v. Admiral Pest Control Co.*, 933 P.2d 937, 939 (Okla. 1996). Oklahoma law imposes a duty to render performance of a contract in a negligent-free manner. *See id.* Although Plaintiff is not a party to the Audit Contract, he contends that Primus owed him a duty based on his status as a third-party beneficiary.

The Oklahoma Supreme Court has outlined the following test for determining whether a party is a third-party beneficiary of a contract:

> As a general proposition, the determining factor as to the right of a third party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. Thus, it is often stated that the contract must have been intended for the benefit of the third person in order to entitle him to enforce it.

*G.A. Mosites Co. of Ft. Worth, Inc. v. Aetna Cas. & Sur. Co.*, 545 P.2d 746, 749 (Okla. 1976). Further, a person "need not be a party to or named in the contract to occupy third-party beneficiary status." *Shebester v. Triple Crown Insurers*, 974 F.2d 135, 138 (10th Cir. 1992).

In discerning the parties' intent, a court must consider "the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." *G.A. Mosites Co. of Ft. Worth, Inc.*, 545 P.2d

at 749; *see also Shebester*, 974 F.2d at 138 ("The question is one of construction of the contract, determined by the terms of the contract."). Indeed, "the contract must be made 'expressly' for the third party's benefit, which 'means in an express manner; in direct or unmistakeable [*sic*] terms; explicitly; definitely; directly.'" *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1230 (10th Cir. 2012) (citing *Keel v. Titan Const. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981); OKLA. STAT. tit. 15, § 29 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.")). However, "[t]he benefit cannot be enforced if it has to be implied from the terms of the contract or results incidentally from its performance." *Oil Capital Racing Ass'n, Inc. v. Tulsa Speedway, Inc.*, 628 P.2d 1176, 1179 (Okla. Civ. App. 1981).

Under the circumstances of this case, the Court finds that Plaintiff was not a third-party beneficiary to the Audit Contract. Plaintiff cannot establish that the performance of the audit contract was *expressly* for his benefit. At most, the allegations in the SAC establish that Primus' performance under the contract was for the benefit of Jenson Farms, who had legal and commercial incentives associated with the quality and safety of its produce. Consequently, Plaintiff was merely an incidental beneficiary of Primus' performance under the contract. *See Copeland*, 933 P.2d at 939. Therefore, Primus owed no duty to Plaintiff based on the Audit Contract.

*2. Causation*

As outlined above, the Court finds that Primus owed no duty to Plaintiff in conducting the July 25, 2011 Audit of the Jenson Farms' packinghouse. Even if Primus owed a duty to Plaintiff, the Court finds that Plaintiff cannot establish that his injuries were caused by Primus' allegedly negligent performance of the July 25, 2011 Audit. "Although causation is generally a

question of fact, 'the question becomes an issue of law when there is no evidence from which a jury could reasonably find the required proximate, causal nexus between the careless act and the resulting injuries.'" *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 620 (10th Cir. 1998) (quoting *Henry v. Merck and Co.*, 877 F.2d 1489, 1495 (10th Cir. 1989)).

"Failure to establish that the defendant's negligence was the proximate cause of the harmful event is fatal to [a] plaintiff's [negligence] claim." *Thompson v. Presbyterian Hospital, Inc.*, 652 P.2d 260, 263 (Okla. 1982). There are two parts to proximate cause: cause in fact and legal causation. Cause in fact "refers to everything which contributed to a result, which would not have occurred without" a defendant's negligence. *Brewer v. Murray*, 292 P.3d 41, 53 (Okla. Civ. App. 2012). However, liability for negligent conduct is further limited by legal causation. *Lang v. Herrera*, 2013 WL 4500739 (N.D. Okla. Aug. 21, 2013). Legal causation cuts off a defendant's liability for tenuous acts, which means plaintiffs must prove that their injuries are "the result of **both** the natural and probable consequences of the primary negligence," or that their injuries were foreseeable. *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997) (emphasis original). The proximate cause of an event "is that which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred." *Id.* at 1079 n. 14 (internal quotations omitted).

Under the circumstances of this case, the Court finds that Plaintiff has failed to allege facts sufficient to demonstrate a causal connection between the allegedly negligent July 25, 2011 Audit and the Plaintiff's injury. Significantly, Plaintiff cannot demonstrate that Primus' audit was the cause in fact, also known as but-for causations, of his injury. "As a general rule, a plaintiff demonstrates but-for causation by showing that his injury would not have been sustained absent the defendant's negligence, and there can be multiple but-for causes of a

plaintiff's injury." *Wilcox v. Homestake Mining Co.*, 619 F.3d 1165, 1173 (10th Cir. 2010) (citing Restatement (Second) of Torts § 432). Here, Plaintiff has failed to allege any facts suggesting that a properly performed audit would have halted distribution of the contaminated cantaloupe, thereby averting Plaintiff's injury. As explained above, the SAC does not contain any facts allowing the Court to infer that Primus had the authority to prevent distribution of the cantaloupe or that the contaminated cantaloupe would not been distributed in the event of unsatisfactory audit results. Accordingly, because Plaintiff has failed to plead facts sufficient to establish a causal nexus between Primus' alleged negligent audit and Plaintiff's injury, Plaintiff's negligence claim based on the July 25, 2011 Audit must be dismissed.

**B. Negligence in Hiring, Selection, and Monitoring**

The Court also finds that Plaintiff's negligent hiring, selection, and monitoring claim against Primus must be dismissed. First, the Court finds Plaintiff's conclusory allegations insufficient to satisfy the pleading standards set out in Fed. R. Civ. P. 8(a). The SAC contains no allegations from which to infer that Primus breached its duty to exercise reasonable care in hiring and supervising its agents. Plaintiff asserts that the "alleged facts describing a poorly conducted audit, with the factual backdrop of an FDA investigation conducted one-and-a-half months later that heavily criticized many of the practices and conditions that Mr. DiIorio had previously found in 'total compliance'" are sufficient to establish "training deficiencies." (Doc. No. 93, 22.) The Court disagrees.

> As explained in *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (1999),
>
> [e]mployers may be held liable for negligence in hiring, supervising or retaining an employee. In such instances, recovery is sought for the employer's negligence. The claim is based on an employee's harm to a third party through employment. An employer is found liable, if—at the critical time of the tortious incident—, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their ***prior knowledge of the***

> *servant's propensity* to commit the very harm for which damages are sought. … The *critical element for recovery is the employer's prior knowledge of the servant's propensities* to create the specific danger resulting in damage.

(Emphasis added). Here, Plaintiff failed to allege any facts concerning Primus' prior knowledge of its agents' propensities to perform negligent safety audits. Thus, the factual allegations contained in the SAC are insufficient to state a claim for negligent hiring, selection, and monitoring.

Further, even if Plaintiff's allegations regarding Primus' prior knowledge of its agents' dangerous propensities were sufficient, Plaintiff's negligent hiring, selection, and monitoring claim would nevertheless be dismissed. As explained above, Plaintiff's allegations are insufficient to establish a causal link between the allegedly negligently performed July 25, 2011 Audit and Plaintiff's injuries. Accordingly, Plaintiff's negligent hiring, selection, and monitoring claim must be dismissed.

**C. Leave to Amend Complaint**

Plaintiff also requests leave to amend his Complaint. Under Fed. R. Civ. P. 15(a)(1)(A)(B) a party may freely amend its complaint within "21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion ... whichever is earlier." At all other times, a party must seek leave of the court to amend its pleading. Fed. R. Civ. P. 15(a)(2). "When a party files a proper motion for leave to amend, rule 15(a) further provides 'leave shall be freely given when justice so requires.'" *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185 (10th Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). Generally, a party must file a motion to amend before the court will grant leave to amend. *Id.* at 1185–86. Where a party does not file a formal motion to amend its pleading, the Tenth Circuit provides that "a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed

amendment before the court is required to recognize that a motion for leave to amend is before it." *Id.* at 1186–87. However, a request made in a response to a motion to dismiss "that leave be given to the Plaintiffs to amend their Complaint," *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1989), is simply not enough to merit consideration. *Calderon*, 181 F.3d at 1186.

The Court finds that Plaintiff's request for leave to amend is insufficient under the standards outlined above. Plaintiff failed to file a motion for leave to amend, and his only request for leave to amend came at the end of his Response to Primus' Motion to Dismiss. Plaintiff's entire request stated: "In the alternative, and if the Court is inclined to grant Primus's Motion, Plaintiff requests that the Court give him leave to amend." (Doc. No. 93, 26.) Applying *Calderon,* Plaintiff's bare request for leave to amend at the end of a response to another motion is not sufficient for Rule 15(a)(2). *See* 181 F.3d at 1186. Furthermore, Plaintiff's request for leave fails to comply with LCvR 7.1(f), which provides that "[a] response to a motion may not also include a motion or a cross-motion made by the responding party." Therefore, Plaintiff's request for leave must be **STRICKEN**.[2]

## CONCLUSION

For the reasons detailed above, Defendants' Motion to Dismiss (Doc. No. 21) is **GRANTED**.

Dated this 31st day of December, 2013.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[2] The Court also notes that even if leave were granted, it is unlikely the Plaintiff could allege facts sufficient to support viable claims against Primus.